## MARY MURPHY *vs.* CITY OF WORCESTER.

Worcester.    October 6, 1893. — October 19, 1893.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Defective Highway — Burden of Proof — Liability of City.*

In an action against a city for personal injuries occasioned to the plaintiff by a
defect in a highway, under Pub. Sts. c. 52, § 18, the burden of proof is on
the plaintiff to show that the defect might have been remedied by reasonable
care and diligence on the part of the city.

In an action against a city for personal injuries occasioned to the plaintiff by a
defect in a highway, the evidence showed that the alleged defect consisted of
an accumulation of snow and ice on the sidewalk of a street; that the accident
occurred on Wednesday afternoon; that on the previous Sunday snow had
fallen about a foot in depth, and had turned to rain and sleet on Monday; that
the weather was clear and cold on Tuesday; that it snowed lightly during
Wednesday; that in the middle of the sidewalk a path had been formed, by
treading down the snow, from one to two feet wide; that the snow and ice on
the sides of the pathway were from six inches to a foot in depth; that there
were holes in the pathway made by the feet of travellers; and that the plain-
tiff, in passing over the way, stumbled on the ice, which was covered with snow,
and in trying to save herself caught her foot in a hole and fell down, receiving
the injuries complained of. The plaintiff asked the judge to instruct the jury
as follows : " If you find that the accumulation of the ice and snow on either
side of the pathway had assumed such shape as to force the plaintiff to walk in
the pathway, or if it contributed in any way to the accident, then the character
and shape of the snow and ice on either side of the pathway may be considered
as a part of the defect complained of." The judge read this request to the jury,
and said: " I do not give you that instruction in precisely that form, but you are
entitled to take into consideration the whole situation as the evidence finds it,
and if she of her own voluntary motion selected the pathway, believing that was
the line of safety, then the character of the ice and snow upon the side of that
pathway are of no consequence whatever. But if, in passing over that side-
walk generally, she found, as she was passing over it, this accumulation of snow
and ice upon either side of the pathway that was dangerous for travel, and in
getting from that dangerous position she then stepped into the pathway which
was a defective one, then you are entitled, of course, to take into consideration
the fact that she was upon a dangerous pathway, upon either side of which there
was a dangerous accumulation, and if she in getting out of that exercised due
care and received an injury, then she would be entitled to recover." *Held,* that
the plaintiff had no ground of exception.

TORT, for personal injuries occasioned to the plaintiff by an
alleged defect in a highway in the defendant city. Trial in the
Superior Court, before *Hopkins,* J., who allowed a bill of excep-
tions, in substance as follows.

The plaintiff was injured in consequence of a fall upon the sidewalk of Grafton Street in the defendant city, on January 14, 1891.

Bertha O'Connell testified as follows: "This accident happened on Wednesday afternoon about three o'clock. It snowed the Sunday afternoon and night before about a foot, and turned to rain and sleet about noon on Monday, and cleared off and froze Monday afternoon. It was clear and cold Tuesday. When I was down Tuesday it was very rough on part of the sidewalk, and in the centre the snow was beaten down; it was smooth. The snow was not shovelled off on the sides. It snowed very little on Wednesday forenoon and a little in the afternoon, not of any account. The snow covered the ice up in places so you could not tell where the ice was. It was slippery, and I went along by the fence, and occasionally had to put my hand on the fence to keep from falling. After the plaintiff was taken home I went down the rest of the way in the middle of the street. I should say in the middle of the sidewalk there was probably three or four inches of snow where it was beaten down and continually trodden over. On the sides it was rough. As I remember it, it was rough from footprints where she lay. The snow was frozen so it was rough."

On cross-examination the witness testified that the centre of this sidewalk was smooth, and the roughness was on the edges; that a light snow had fallen and covered up the ice, so that she could not tell where the slippery places were.

On re-direct examination she testified that the place in the centre of the sidewalk was perhaps three feet wide where it was smooth; and that the sidewalk might be seven or eight feet wide.

The plaintiff testified as follows: "I was walking as carefully as I could, and I found the place very bad and I tried to walk as best I could, and I kind of stumbled on a piece of ice and tried to save myself and I got my foot stuck into a hole, — I don't know what kind of a hole, by the print of a boot I guess, — and I tumbled down. The centre of the sidewalk was rough; it was covered with ice. The ice that went over the hole was five or six inches deep. The place was all hollows where people were walking. The place was not shovelled off. There was snow on

the side of the sidewalk. The snow where I was walking must be six or seven inches, quite thick. There was a footpath in the middle about a foot wide."

On cross-examination she testified as follows : " The pathway in the middle was smooth, and was covered with snow that was then falling. A little snow in the morning covered the ice so I could see nothing. It was slippery over the middle of the sidewalk, and covered with snow. I could not see the ice. I could see it where I fell, — my clothes brushed it off. There was a path in the middle of the sidewalk more than a foot wide."

John Murphy testified as follows: " I saw the sidewalk Sunday night. It was covered with snow. You could see footprints and hubbles, and the sidewalk was all irregular, all chunks of ice. There was a path in the centre, and on the outside there was snow. The snow was about a foot deep on the outside and kind of sloped in. There was a kind of a beaten path about eighteen or twenty inches wide. It was trod down in a rough state. I should say the holes were from three to five inches on the side of the path. There were some holes in the path, but not very deep."

On cross-examination he testified as follows · " The path was not smooth, nor it was not rough. The banks on the sides were about a foot high."

Michael McCady testified as follows : " I should say there was a path about two feet wide right in the centre. The snow was soft and had frozen over and left footprints ·in the snow which froze over. On the outside of the path the snow was three or four inches deep. It might be six or ten. It was a good deal higher than the centre. It might be six inches higher on the sides than it was in the path in the centre of the sidewalk. I should think the footprints two or three inches deep, might be four."

The following was all the evidence introduced by the defendant.

John Brosnihan testified : " In January, 1891, I lived in the Maher house [opposite which the plaintiff fell]. The sidewalk was always right. I did not know anything about it when she fell."

Daniel J. Kelly testified : " In January, 1891, I lived in the

house adjoining the Maher house.    I had charge of the side-
walk.    I don't know exactly the condition of that sidewalk in
front of that house in January.    I made it my business to see
that the walk was cleared and made passable.    There was no
time, to my recollection, when the walk was not clear and
passable."

The plaintiff asked the judge to instruct the jury as follows :

" 1. If you find that the condition of the sidewalk was defect-
ive at the time of the accident, and had existed in such defective
condition after the city had notice thereof, or might have had
notice by the exercise of reasonable care and diligence, then it
is incumbent upon the defendant to show that it made reason-
able efforts to remove or remedy the defect, but was unable to
do so prior to the accident.

" 2. If you find that the accumulation of the ice and snow on
either side of the pathway had assumed such shape as to force
the plaintiff to walk in the pathway, or if it contributed in any
way to the accident, then the character and shape of the snow
and ice on either side of the pathway may be considered as a
part of the defect complained of."

The judge declined to give the first instruction requested, but
gave the following instruction :

" The burden of proof is always upon the plaintiff to satisfy
you, by a fair preponderance of the evidence, that the city was
negligent in the respect charged.    It is not upon the defendant
city to show that it was not, but it must meet the evidence
offered if it can ; but it is upon the plaintiff to show that it
was negligence on the part of the city that resulted in this
accumulation of snow and ice, and her right to recover depends
upon her satisfying you that the city was negligent in that
respect."

The judge read the second request to the jury, and said :

" I do not give you that instruction in precisely that form, but
you are entitled to take into consideration the whole situation as
the evidence finds it, and if she of her own voluntary motion
selected the pathway, believing that was the line of safety, then
the character of the ice and snow upon the side of that pathway
are of no consequence whatever.    But if, in passing over that
sidewalk generally, she found as she was passing over it this

accumulation of snow and ice upon either side of the pathway that was dangerous for travel, and in getting from that dangerous position she then stepped into the pathway which was a defective one, you are entitled, of course, to take into consideration the fact that she was upon a dangerous pathway, upon either side of which there was a dangerous accumulation, and if she in getting out of that exercised due care and received an injury, then she would be entitled to recover."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*B. W. Potter*, for the plaintiff.

*W. S. B. Hopkins*, (*F. B. Smith* with him,) for the defendant.

KNOWLTON, J. By St. 1877, c. 234, § 2, (Pub. Sts. c. 52, § 18,) a qualification was introduced into the law creating a liability for an injury or damage to property caused by defects in a highway, by adding to the conditions precedent to the right to recover the requirement that the defect or want of repair in the way should be such as might have been remedied, or the damage or injury such as might have been prevented " by reasonable care and diligence on the part of the county, town, place, or persons by law obliged to repair the same." In order to show negligence or fault on the part of the city or town, it is as necessary to establish this proposition as to prove that the way is defective. Usually it is not necessary to prove it by direct evidence, for ordinarily it may be a matter of legitimate inference from the existence of the defect for a certain length of time; but the burden of proof is on the plaintiff to establish it in some way as one of the facts mentioned in the statute on which the right of recovery depends. The ruling on this part of the case was correct.

The presiding justice was not called upon to give the second ruling requested without qualification, and in the form in which it was asked. He thought it proper to direct the attention of the jury to " the whole situation," and to point out to them the possibility of the plaintiff's having chosen her pathway along the sidewalk without reference to the condition of the walk on each side of her line of travel, and to tell them if she selected her pathway voluntarily as a safe place in which to walk, it was immaterial what the condition of the snow and ice on either

side was.   There was evidence in the case which made it proper
to instruct the jury on this point.   He then presented to them
the alternative of her finding, on passing over the sidewalk,
a dangerous accumulation of snow and ice on either side, and
of her taking on that account the pathway where she was hurt,
which proved to be defective, and told them that, if they found
the facts in that way, they might take into account the danger-
ous accumulation on either side.   Although the language of a
part of this instruction is not entirely clear, we are of opinion
that in view of the form of presenting the alternative proposi-
tions, the jury, in their consideration of the snow and ice on
either side as bearing upon the plaintiff's conduct and the
defendant's liability, were not limited to an accident occurring
at the point where she stepped into the pathway, but that the
instruction was intended to apply equally if the injury occurred
after she had begun walking in the path which she had taken
in part because of the danger on each side of it.   It does not
appear that the rights of the plaintiff were prejudiced by the
form in which the instruction was given.

*Exceptions overruled.*